THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RUSSELL W. CHITTENDEN
Assistant United States Attorney
California State Bar No. 112613
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2444
    Facsimile: (213) 894-7819
    Email: russell.chittenden@usdoj.gov

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BLX CAPITAL, LLC, a Delaware limited liability company, | **SACV09-1000 JVS MLGx** |
|     Plaintiff, | NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY DEFENDANT U.S. SMALL BUSINESS ADMINISTRATION |
|     v. | |
| ZNM HOLDINGS, INC., a California corporation; DIPU HAQUE, an individual; SIKDER INCORPORATED, a California corporation; M. SIKDER HOLDINGS, INC., a California corporation; ZMS, INC., a California corporation; GRADY HANSHAW, an individual; U.S. SMALL BUSINESS ADMINISTRATION, a United States government agency; and DOES 1 through 20, inclusive, | [28 U.S.C. § 1442] |
|     Defendants. | |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

DISTRICT OF CALIFORNIA:

    Pursuant to the provisions of 28 U.S.C. § 1442, defendant U.S. Small

Business Administration ("SBA") hereby removes the above-entitled action from

No Fee

N/S

FILED

2009 SEP -1 PM 3:23
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___ NL

the Superior Court of the State of California for the County of Orange to this

Honorable Court.  The grounds for the removal are as follows:

1.    On or about July 20, 2009, plaintiff BLX Capital, LLC ("plaintiff")

filed a Complaint in the Superior Court of the State of California for the County of

Orange, Case No. 30-2009 00126313.  SBA is among the named defendants.

2.    The first date SBA received a Summons and the Complaint was on or

after August 7, 2009.

3.    Copies of all process, pleadings, and other documents received by

HUD in this action are attached hereto as Exhibit "A."

4.    The above-described action is one which may be removed to this

Court pursuant to 28 U.S.C. § 1442(a)(1) because SBA is an agency of the United

States within the meaning 28 U.S.C. § 1442(a)(1) which was, at all times material

to the complaint herein, acting under the color of its agency.  Such removal is a

matter of right for the federal agency which has been sued.  <u>Willingham v.</u>

<u>Morgan</u>, 395 U.S. 402, 406, 90 S.Ct. 1813, 1815, 23 L.Ed.2d 396, 401 (1969).

Removal by HUD is effective as to the entire action, including the non-federal

portions of the case.  <u>Murphy v. Kodz</u>, 351 F.2d 163, 167 (9th Cir. 1965).  A

federal defense to this action exists in that, <u>inter alia</u>, SBA is not a suable entity

and, as such, is protected under the principle of sovereign immunity from this

action.

DATED: September 1, 2009.

THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

RUSSELL W. CHITTENDEN
Assistant United States Attorney

Attorneys for Defendant

2

1  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
2  LEO D. PLOTKIN (SBN 101893)
   BRADLEY I. KRAMER (SBN 234351)
3  815 Moraga Drive
   Los Angeles, California  90049
4  Telephone:     (310) 471-3000
   Facsimile:     (310) 471-7990
5
   Attorneys for Plaintiff
6  BLX CAPITAL, LLC

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUL 20 2009

ALAN CARLSON, Clerk of the Court

BY _____B. LEA_____ DEPUTY

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF ORANGE

10

11  BLX CAPITAL, LLC,                    Case No.  **30-2009**
    a Delaware limited liability company,         **00126313**
12
                 Plaintiff,              **COMPLAINT FOR:**
13
           vs.                             1. **JUDICIAL FORECLOSURE**
14                                         2. **BREACH OF WRITTEN**
    ZNM HOLDINGS, INC., a California          **GUARANTEE**
15  corporation; DIPU HAQUE, an individual;
    SIKDER INCORPORATED, a California     **JUDGE FRANZ E. MILLER**
16  corporation; M. SIKDER HOLDINGS, INC., a        **DEPT. C14**
    California corporation; ZMS, INC., a California
17  corporation; GRADY HANSHAW, an
    individual; U.S. SMALL BUSINESS
18  ADMINISTRATION, a United States
    government agency; and DOES 1 through 20,
19  inclusive,

20               Defendants.

21

22

23

24

25

26

27

28

EXHIBIT A

Plaintiff BLX Capital, LLC ("BLX") hereby alleges and complains against defendants ZNM Holdings, Inc. ("ZNM"), Dipu Haque ("Haque"), Sikder Incorporated ("Sikder"), M. Sikder Holdings, Inc. ("MSH"), Grady Hanshaw ("Hanshaw"), the U.S. Small Business Administration (the "SBA"), and Does 1-20 (collectively, "Defendants") as follows:

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.     The Parties.**

1.     BLX is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York, and duly authorized to do business in the State of California.

2.     BLX is informed and believes and thereon alleges that ZNM is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 3080 Main Street, Irvine, CA 92614.

3.     BLX is informed and believes, and thereon alleges, that defendant Haque is an individual residing in the County of Orange, State of California.

4.     BLX is informed and believes, and thereon alleges, that defendant Sikder is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 8581 Santa Monica Blvd #706, Los Angeles, CA 90069.

5.     BLX is informed and believes, and thereon alleges, that defendant MSH is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 12101 Palms Blvd., Los Angeles, CA 90066.

6.     BLX is informed and believes, and thereon alleges, that defendant Hanshaw is an individual residing in the County of Orange, State of California.

7.     BLX is informed and believes and thereon alleges that the SBA is a United States government agency duly organized and existing under the laws of the United States, and having a business address in California of 650 Capitol Mall, Suite 7-500, Sacramento, CA, 95814.

8.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 20, inclusive, are unknown to BLX, who therefore sues

EXHIBIT A

1   said defendants by such fictitious names.  BLX will amend this Complaint to show their true

2   names and capacities when the same have been ascertained.

3       9.      BLX is informed and believes, and on that basis alleges, that the defendants

4   named herein as Does 1 through 20, inclusive, and each of them, are the agents, co-conspirators

5   or representatives of one another or have, or claim to have, some right, title or interest in or lien

6   upon ("Interest") the Property (defined below) or in the rents, issues and profits therefrom.

7   Plaintiff is further informed and believes, and on that basis alleges, that the Interests, if any, of

8   said defendants, and each of them, are subsequent to and inferior to Plaintiff's rights in the

9   Property and the rents, issues and profits derived therefrom.

10      10.     BLX is informed and believes and thereon alleges that defendants ZNM, Haque,

11  Sikder, MSH, Hanshaw, the SBA, and Does 1 through 20, inclusive, and each of them, were the

12  agents, servants, and employees or each of the other, and in doing and suffering the acts

13  hereinafter alleged, each was acting in such capacity and within the relative scope of his or her

14  authority.

15  **B.     The Real Property.**

16      11.     Irvine Retail Properties Company, a division of the Irvine Company, a Michigan

17  corporation, is the record owner of certain real property located in the County of Orange, State of

18  California commonly known as 3080 Main Street, Irvine, California 92614 (the "Property") and

19  legally described as follows:

20  PROPERTY SITUATED IN THE CITY OF IRVINE IN THE COUNTY OF ORANGE

21  and [] described as follows:

22  PARCEL 2 of PARCEL MAP NO 96-128 in the City of Irvine, County of Orange,
    State of California, as shown on Map filed in Book 297, pages 34, 35 and 36 of
23  parcel maps, in the office of the County Recorder of Orange County, California.
24  The Property tax identification number is 447-172-07.

25  **C.     The Leases and Subleases.**

26      12.     On or about April 7, 1997, Irvine Retail Properties Company entered into a

27  ground lease (the "Original Lease") pursuant to which Grady Hanshaw and Sholeh Hanshaw,

28

-2-

EXHIBIT A

1    husband and wife, dba Main Street Car Wash ("Main Street Car Wash") leased the Property for a

2    term of twenty (20) years with one (1) 5-year option to extend the term of the Original Lease.

3         13.    On or about May 27, 1998, Main Street Car Wash entered into a Standard

4    Industrial/Commercial Multi-Tenant Lease (the "Sublease") pursuant to which Main Street Car

5    Wash subleased the Property to Allied Lube, Inc., a California corporation ("Allied Lube").

6         14.    On or about July 13, 2001, the Main Street Car Wash quitclaimed their leasehold

7    estate interest in the Property to Wash & Go Car Wash Corporation, a Nevada corporation

8    ("Wash & Go Car Wash") as evidenced by Quitclaim Deed dated July 13, 2001 and recorded on

9    August 1, 2001 in the office of the county recorder for the County of Orange, State of California,

10   as instrument number 20010526376.

11        15.    Pursuant to a Side Letter dated July 7, 2003, and a Consent and Assignment and

12   Modification of Lease dated July 25, 2003, Wash & Go Car Wash thereafter assigned its right,

13   title, and interest in the Property to Brady E. Gross, an individual ("Gross").

14        16.    On or about October 17, 2003, Gross assigned its right, title, and interest to the

15   Property to Wash & Go Carwash & Detail Center, LLC, a California limited liability company

16   ("Wash & Go Carwash & Detail") as evidenced by an assignment (the "Gross Assignment")

17   dated October 17, 2003 and recorded on November 20, 2003 in the office of the county recorder

18   for the County of Orange, State of California, as instrument number 2003001408328.

19        17.    On or about January 14, 2005, Wash & Go Carwash & Detail executed a

20   Memorandum of Sublease pursuant to which it provided notice of the existence of Allied Lube's

21   leasehold estate interest in the Property under the Sublease.   The Memorandum of Sublease was

22   recorded on September 20, 2005 in the office of the county recorder for the County of Orange,

23   State of California, as instrument number 2005000741276.

24        18.    On or about June 7, 2006, Wash & Go Carwash & Detail executed an Assignment

25   of Lease pursuant to which Wash & Go Carwash & Detail assigned its right, title, and interest in

26   and to the Property to ZNM (the "Wash & Go Carwash & Detail Assignment").

27

28

EXHIBIT A

19.     On or about June 1, 2006, in consideration for the Wash & Go Carwash & Detail Assignment and in connection with a promissory note executed by ZNM in favor of Wash & Go Carwash & Detail in the principal sum of $700,000, ZNM executed a Short Form Deed of Trust and Assignment of Rents pursuant to which ZNM conveyed its interest in the Property and in the personal property collateral associated with the Property to First American Title Insurance Company, as trustee, for the benefit of Wash & Go Carwash & Detail, as beneficiary (the "Wash & Go Carwash & Detail Trust Deed").  The Wash & Go Carwash & Detail Trust Deed was recorded on June 9, 2006 in Book 2006000386872 in the office of the county recorder for the County of Orange, State of California.

20.     True and correct copies of the Original Lease, the Gross Assignment, the Memorandum of Sublease, the Wash & Go Carwash & Detail Assignment, and the Wash & Go Carwash & Detail Trust Deed are attached collectively hereto as Exhibit "A".

**D.      The Letter Loan Agreement, Adjustable Rate Promissory Note, and Leasehold Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing.**

21.     On or about May 25, 2006, ZNM executed and delivered to BLX a letter loan agreement (the "Loan Agreement") whereby BLX agreed to loan money to ZNM in a principal sum of $1,050,000.00, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated by reference herein.

22.     On or about May 25, 2006, ZNM executed and delivered to BLX a written Adjustable Rate Promissory Note in the principal sum of $1,050,000.00 (the "Note"), a true and correct copy of which is attached hereto as Exhibit "C" and incorporated by reference herein.

23.     Pursuant to the Note, BLX made a loan to ZNM in the sum of $1,050,000.00 (the "Loan"), and ZNM agreed to repay the Loan, with interest, in monthly installments.

24.     To secure the obligations of ZNM under the Note, on or about May 25, 2006, ZNM executed a written Leasehold Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing (the "BLX Trust Deed") whereby ZNM conveyed its interest in the Property

EXHIBIT A

and in the personal property collateral associated with the Property to W. David Jenkins, as trustee, for the benefit of BLX, as beneficiary.  The BLX Trust Deed was recorded on June 9, 2006 in Book 2006000386866 in the official Records of the County of Orange, State of California.  A true and correct copy of the BLX Trust Deed is attached hereto as Exhibit "D" and incorporated by reference herein.

25.    BLX has performed all of its obligations, if any, pursuant to the Loan Agreement and Note, except to the extent performance was waived, excused or discharged by reason of the conduct of ZNM.

**E.    The Additional Notes and Deeds of Trust.**

26.    On or about February 27, 2006, to secure the repayment of a note in the principal sum of $757,000 executed by ZNM in favor of EDF Resource Capital, Inc. ("EDF"), ZNM executed a written Leasehold Deed of Trust with Assignment of Rents whereby ZNM conveyed its interest in the Property and associated collateral to First American Title Insurance Company, as trustee, for the benefit of EDF, as beneficiary (the "EDF Trust Deed").  On or about February 27, 2006, EDF executed a Corporation Assignment of Deed of Trust whereby EDF granted, assigned, and transferred its interest in the EDF Trust Deed to the SBA.  The EDF Trust Deed and Corporation Assignment of Deed of Trust were recorded on June 9, 2006 as Document Nos. 2006000386868 and 2006000386869, respectively, in the official Records of the County of Orange, State of California.   True and correct copies of the EDF Trust Deed and Corporation Assignment of Deed of Trust are attached collectively hereto as Exhibit "E" and incorporated by reference herein.

27.    On or about May 25, 2006, to secure the repayment of a note in the principal sum of $660,000 in favor of A&B Investments, Corp. ("A&B"), ZNM executed a written Deed of Trust with Assignment of Rents whereby the ZNM conveyed its interest in the Property and associated collateral to MTC Financial, Inc. dba Trustee Corps, as trustee, for the benefit of A&B, as beneficiary (the "A&B Trust Deed").  On or about April 7, 2009, A&B executed an Assignment of Deed of Trust (the "Assignment of A&B Trust Deed") whereby A&B granted,

1  assigned, and transferred its interest in the A&B Trust Deed to Grady Hanshaw.  The A&B Trust

2  Deed and Assignment of A&B Trust Deed were recorded on June 9, 2006 and April 8, 2009 as

3  Document Nos. 2006000386870 and 2009000169940, respectively, in the official Records of the

4  County of Orange, State of California.   True and correct copies of the A&B Trust Deed and

5  Assignment of A&B Trust Deedt are attached collectively hereto as Exhibit "F" and incorporated

6  by reference herein.

**F.   The Subordination Agreement**

7  28.   On or about May 25, 2006, Allied Lube executed a Subordination of Leasehold

9  Interest agreement pursuant to which Allied unconditionally subordinated its interest in the

10  Property to the BLX Trust Deed.  A true and correct copy of the Subordination Agreement is

11  attached hereto as Exhibit "G" and incorporated by reference herein.

12  29.   On or about May 31, 2006, BLX and EDF entered into a Third Party Lender

13  Agreement pursuant to which EDF subordinated its interest in the Property and to the associated

14  collateral to that of BLX.   A true and correct copy of the Third Party Lender Agreement is

15  attached hereto as Exhibit "H" and incorporated by reference herein.

**G.   The Guarantees.**

17  30.   On or about July 29, 2004, Haque, Sikder, MSH, and ZMS (collectively, the

18  "Guarantors"), each executed unconditional written guarantees of the Loan (collectively, the

19  "Guarantees"), pursuant to which each of Haque, Sikder, MSH, and ZMS unconditionally

20  guaranteed payment to BLX of all amounts due and owing to BLX under the Loan Agreement

21  and Note.  True and correct copies of each of the Guarantees are attached collectively hereto as

22  Exhibit "I", and are incorporated by reference herein.

**H.   The Demand for Payment.**

24  31.   On or about January 21, 2009, demand for payment letters (the "Demand for

25  Payment Letters") were sent by BLX to ZNM and to each of the Guarantors stating that the Note

26  and Guarantees were in default, accelerating the amount due and owing under the Note and the

Guarantees.  A true and correct copy of the Demand for Payment Letter is attached collectively hereto as Exhibit "J", and are incorporated by reference herein.

32.     Despite demand, neither ZNM nor any of the Guarantors have paid the amounts due and owing to BLX.

## FIRST CAUSE OF ACTION

### Judicial Foreclosure of Trust Deed

### (Against All Defendants)

33.     BLX repeats and realleges each and all of the allegations of paragraphs 1 through 32, inclusive, as though set forth in full herein.

34.     BLX is now, and at all relevant times herein has been, the lawful owner and holder of the Note and the Guarantees, and the beneficial interest holder of the BLX Trust Deed.

35.     ZNM has defaulted under the Note in that, among other things, it (a) has failed to make any payments due and owing to BLX and remains delinquent for payments due from October 1, 2008 through July, 2009, inclusive, in the aggregate amount of approximately $123,259.00.

36.     Pursuant to the Note and the Demand for Payment Letter, the entire indebtedness due and owing on the Loan has been accelerated and is now due and payable in full in the principal sum of $920,082.64 as of July 16, 2009, with interest accruing thereafter at the daily rate of $152.71 and with all fees, charges, and expenses due under the Note (the "Indebtedness").

37.     As a result of the default under the Note, BLX is entitled, among other things, to (a) foreclose on the BLX Trust Deed, (b) sell the leasehold interest in the Property and any of the associated collateral that may be sold therewith, (c) obtain a deficiency judgment against ZNM and Does 1 through 10 for the unpaid sum of the Indebtedness, and (d) such other and further relief as is set forth in the Prayer for Relief as to this First Cause of Action.

38.     BLX has been required to retain, and has retained the law firm of Levy, Small & Lallas, a Partnership Including Professional Corporations, to institute this action and enforce the

EXHIBIT A

1    obligations of ZNM.  As a result, BLX has incurred and will continue to incur attorneys' fees and

2    expenses and other costs.

3        39.    Pursuant to the Note, BLX is entitled to recover its attorney's fees and costs

4    herein.

5                      **SECOND CAUSE OF ACTION**

6                      **For Breach of Written Guarantee**

7            **(Against Haque, Sikder, MSH, ZMS, and Does 11-20)**

8        40.    BLX repeats and realleges each and all of the allegations of paragraphs 1 through

9    39, inclusive, as though set forth in full herein.

10       41.    On or about May 25, 2006, each of the Guarantors executed and delivered a

11   Guarantee to BLX in consideration of, among other things, the Loan that BLX made to ZNM as

12   reflected by the Note.

13       42.    BLX has performed all of its obligations, if any, pursuant to the Guarantees,

14   except to the extent performance was waived, excused or discharged by reason of the Guarantors

15   conduct.

16       43.    The Guarantors, and each of them, have breached their obligations to BLX under

17   the Guarantees in that each of them has failed to pay the Indebtedness.

18       44.    As a result of the Guarantors' breach of the Guarantees, BLX has been damaged

19   in the amount of at least the amount of the Indebtedness.

20       45.    As a result of BLX's need to retain, and retention of, the law firm of Levy, Small

21   & Lallas, a Partnership Including Professional Corporations to institute this action and enforce

22   the obligations of ZNM and the Guarantors, BLX has incurred and will continue to incur

23   attorneys' fees and expenses and other costs.

24       46.    Pursuant to the Guarantees, BLX is entitled to recover its attorney's fees and costs

25   incurred herein.

26                          **PRAYER FOR RELIEF**

27       **WHEREFORE**, BLX prays for judgment against Defendants as follows:

28

-8-

EXHIBIT A

1.     On the First Cause of Action against ZNM and Does 1-10, (a) for damages in the sum of at least $920,082.64 as of July 16, 2009, with interest accruing thereafter at the daily rate of $152.71, and with all fees, charges, and expenses due under the Note, through the date of judgment, and (b) for a judgment against all Defendants:

     i.     That all rights, claims, ownership, liens, titles and demands of any or all of the Defendants are subsequent to and subject to the lien of the BLX Trust Deed;

     ii.     That (i) the BLX Trust Deed be foreclosed, (ii) the leasehold interest in the Property be sold, together with such of the associated collateral as may be included in such sale, according to law by a levying officer to be appointed by the Court, (iii) BLX may become a purchaser at the sale, (iv) the proceeds of sale be applied in payment of the Indebtedness, (v) all Defendants, and any or all persons claiming rights subordinate to BLX and Does 1-10, after execution of the BLX Trust Deed, whether as lien claimant, judgment creditor, claimant under a junior trust deed, purchaser, lienholder, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Property and every part of the Property when the time for redemption has elapsed, (vi) the levying officer, after the time for redemption has elapsed, shall execute a leasehold deed to the purchaser of the Property at the sale, and (vii) the purchaser shall be let into possession of the Property on production of the levying officer's deed; and

     iii.     That ZNM and Does 1-10 are personally liable for payment of the Indebtedness and that a deficiency judgment may be entered against ZNM and Does 1-10, jointly and severally.

2.     On the Second Cause of Action against the Guarantors and Does 11-20, for damages in the sum of at least $920,082.64 as of July 16, 2009, with interest accruing thereafter at the daily rate of $152.71 and with all fees, charges, and expenses due under the Note, through the date of judgment.

3.     And on all causes of action alleged herein, for:

     a.     Attorney's fees and costs of suit incurred herein; and

1           b.      Such other and further relief as the Court may deem just and proper.

2

3    DATED:  July 18, 2009               LEVY, SMALL & LALLAS
                                      A Partnership Including Professional Corporations

4                                          LEO D. PLOTKIN
                                      BRADLEY I. KRAMER

5

6

7    By: _____
                                        BRADLEY I. KRAMER

8                                          Attorneys for Plaintiff
                                      BLX CAPITAL, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-10-

EXHIBIT A

## MEMORANDUM OF LEASE

When Recorded, Return To

General Counsel
Irvine Retail Properties Company
550 Newport Center Drive
Newport Beach, California 92660

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder
                                        18.00
19970652593 08:30am 12/19/97
009  9029950 09 50
M11 5 26 6.00 12.00 0.00 0.00 0.00 0.00 0.00 0.00

_Space above this line for Recorders use only_

## GROUND LEASE

### (Short Form - Memorandum)

This Ground Lease (Short Form Memorandum) dated as of _April 7_, 1997 is by and between:

IRVINE RETAIL PROPERTIES COMPANY, a division of The Irvine Company, a Michigan corporation. with its principal office located at 550 Newport Center Drive, Newport Beach, California 92660 ("Landlord"), and Grady Hanshaw and Sholeh Hanshaw, husband and wife, dba Main Street Car Wash, with its principal office located at 630 North Tustin Avenue Suite 405, Orange, California 92867 ("Tenant").

## W I T N E S S E T H :

1.      Landlord hereby leases to Tenant and Tenant hereby leases from Landlord that certain real property situated within the shopping center commonly known as Harvard Place Auto Plaza at the corner of Main Street and Veneto in the, City of Irvine, County of Orange, State of California, as legally described on Exhibit "A" attached hereto and incorporated by reference herein ("Premises") at the rental and upon all of the terms and conditions set forth in that certain Ground Lease dated April 7, 1997, as amended, between the parties hereto, which is incorporated herein by this reference ("Lease").

2.      The Premises is leased for a term of twenty (20) years ("Term") with one (1) 5-year option to extend the Term, subject to earlier termination or extensions due to force majeure as provided in the Lease.

3.      The Lease provides, among other things, that Tenant shall pay any and all taxes, general and special assessments and other charges of every description which during the Term or any extension thereof may be levied upon or assessed against the Premises and all interest

EXHIBIT A

therein and all improvements and other property thereon, whether belonging to Landlord or Tenant.

4.     The Lease provides, among other things, that Tenant shall not encumber, assign or otherwise transfer the Lease, or any right or interest thereunder, without the prior written consent and approval of Landlord.  Any such encumbrance, assignment or other transfer without such prior written consent and approval shall be void and shall confer no rights whatsoever.

5.     The Lease provides, among other things, that Tenant shall have rights of ingress and egress to and from the Premises and all other rights appurtenant to the Premises.

6.     The use and occupancy by Tenant of the Premises shall include the use of the Common Area, as described in the Lease.

7.     Should there be any inconsistency between the terms of this instrument and the Lease, the terms of the Lease shall prevail.

IN WITNESS WHEREOF, each of the parties hereto has executed this instrument as of the date first above written.


LANDLORD:                                          TENANT:

IRVINE RETAIL PROPERTIES COMPANY          GRADY HANSHAW AND
a division of The Irvine Company              SHOLEH HANSHAW,
                                                  husband and wife

By: _____       By: _____
    Richard G. Sim, Executive Vice President      Grady Hanshaw
    The Irvine Company

By: _____       By: _____
    John C. Tsu                                   Sholeh Hanshaw
    Vice President, Finance
    Investment Properties Group

WPERF\APOPE\OMSCW.MEM

## ACKNOWLEDGMENTS

STATE OF CALIFORNIA )
                               ) ss.
COUNTY OF ORANGE )

On *Nov. 12*, 1997, before me, the undersigned, a Notary Public in and for said County and State, personally appeared *Grady and Sholeh Hanshaw*, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

ENIA A. CASTILLO
COMM. # 1034677
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires AUG 4, 1998

_____
(signature of notary)

STATE OF *California* )
                            ) ss.
COUNTY OF *Orange* )

On *December 15*, 1997, before me, the undersigned, a Notary Public in and for said County and State, personally appeared *Richard G. Sim* and *John C. Tsu*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

ANA R. RUIZ
COMM. # 1036960
Notary Public — California
ORANGE COUNTY
My Comm. Expires SEP 18, 1998

_____
(signature of notary)

Recorded in Official Records, County of Orange
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   10.00

2003001408328 11:16am 11/20/03
105 21 A30 3

0.00 0.00 0.00 0.00 4.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

CHAPMAN AVENUE ESCROW
1205 E. Chapman Ave
Orange, CA 92866

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
COMMERCIAL/INDUSTRIAL DIVISION

929563 - JP

## ASSIGNMENT

*Lease is Chirecorded*

FOR VALUE RECEIVED, the undersigned hereby transfers and assigns to WASH & GO CARWASH & DETAIL CENTER, LLC, a California LImtied liabilty Company, all right, title and interest in, to and under the Premises Lease of the following real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures, all easements, rights of way and appurtenances, all other rights, royalties and profits relating to the real property described as:

PARCEL 2 OF PARCEL MAP NO. 96-128, AS SHOWN ON A MAP FILED IN BOOK 287, PAGES 34, 35 AND 36 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, CALIFORNIA

Commonly known as: 3080 Main Street, Irvine, CA 92614

IN WITNESS WHEREOF, the undersigned has executed this document this 17th day of October 2003 at Orange, California

_____
Brady Gross

ACCEPTED AND AGREED:

WASH & GO CARWASH & DETAIL CENTER LLC,
a California Limited Liability Company

_____
BY: Brady Gross, Managing Member

18

EXHIBIT A

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_ } ss.

On _October 17 2003_ before me, _Mildred N. Cork_
Date                                      Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Brady Gross_
Name(s) of Signer(s)

☐ personally known to me

☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Mildred N. Cork_
Signature of Notary Public

MILDRED N. CORK
Commission # 1247593
Notary Public - California
Orange County
My Comm. Expires Jan 1, 2006

Place Notary Seal Above

───────────── OPTIONAL ─────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Attorney in Fact

☐ Trustee

☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1997 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402       Prod. No. 5907       Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT A

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY
SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS
ATTACHED READS AS FOLLOW:

NAME OF NOTARY:            MILDRED N. CORK

COUNTY WHERE BOND IS FILED:  ORANGE

DATE COMMISSION EXPIRES:  JAN. 1, 2004

COMMISSION NO.:   1247593

MANUFACTURERS/VENDOR NO.:  NNA1

PLACE OF EXECUTION:  SANTA ANA, CALIFORNIA
DATE:  11/20/03

*Jeffy C. Poschal*

BY: _____

FIRST AMERICAN TITLE INSURANCE COMPANY

*Land America*
*Commercial Services*
Recording Requested By and
When Recorded Mail to:

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

[barcode]    10.00

2005000741276 08:00am 09/20/05
113 28 M11 6
0.00 0.00 0.00 20.00 15.00 0.00 0.00 0.00

Pennzoil Lube Center Acceptance Corp.
c/o Citicorp North America, Inc.
2600 Michelson Drive, Suite 1200
Irvine, California 92612
Attention:  Compliance Officer

Re:  ALLIED LUBE, INC., et al
    Store #1988, 3080 Main Street
    Irvine, CA 92614
    **Orange County**
    #513492

*5030963-27*

(Space above this line for Recorder's Use)

## MEMORANDUM OF SUBLEASE

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, The Irvine Company, a Delaware corporation, formerly known as IRVINE RETAIL PROPERTIES COMPANY, a division of The Irvine Company, a Michigan corporation, (hereinafter "Master Landlord") is the lessor under that certain Retail Ground Lease dated April 7, 1997, (hereinafter the "Lease") with Grady Hanshaw and Sholeh Hanshaw, husband and wife, (hereinafter "Original Sub-Lessor") whereunder and whereby Master Landlord did lease, rent and demise unto said Original Sub-Lessor the property described in Exhibit A attached hereto, all of which is hereinafter referred to as the "Premises".

WHEREAS, Original Sub-Lessor entered into a Standard Industrial/Commercial Multi-Tenant Lease dated May 27, 1998, (hereinafter "Sublease") with Allied Lube, Inc., a California corporation, (hereinafter "Subtenant") whereunder and whereby Original Sub-Lessor leased the Premises to Subtenant, being more particularly described in the Sublease, and pursuant to the Consent to Sublease dated February 26, 1999

WHEREAS, Original Sub-Lessor quitclaimed their leasehold estate interest in the Premises to WASH & GO CAR WASH CORP., a Nevada corporation, (hereinafter "Sub-Lessor1") as evidenced by the Quitclaim Deed dated July 13, 2001, and recorded August 1, 2001 in the County of Orange, State of California, under instrument number 20010526376.

WHEREAS, Sub-Lessor1 assigned it's right, title, and interest in the Premises to Brady E. Gross, an individual, (hereinafter "Sub-Lessor2") as evidenced by the Side Letter dated July 7, 2003 and the Consent and Assignment and Modification of Lease dated July 25, 2003.

r: Non-Order Search  Doc: OR:2005 00741276          Page 1 of 6          Created By: jdegraff  Printed: 6/16/2009 5:...    EXHIBIT A

WHEREAS, Sub-Lessor2 assigned it's right, title, and interest in the Premises to WASH & GO CARWASH & DETAIL CENTER LLC, a California limited liability company, (hereinafter "Landlord") as evidenced by the Assignment dated October 17, 2003 and recorded November 20, 2003 in the County of Orange, State of California, under instrument number 2003001408328.

WHEREAS, Landlord presently subleases to Subtenant the Premises TO HAVE AND TO HOLD upon Subtenant's paying the Rent and other charges provided for and observing the covenants and conditions set forth in the Sublease, for a term of twenty (20) years, commencing May 27, 1998, with one (1) five (5) YEAR renewal option.

NOW, THEREFORE, this Memorandum of Sublease is executed by the undersigned parties with the intention that the same shall be filed for the record in the Office of the Recorder of Deeds of the County of Orange, State of California, to give notice of the existence of Subtenant's leasehold estate under the Sublease in and to the Premises.

NOW, THEREFORE, this Memorandum of Sublease may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears hereon, and all of which shall together constitute one and the same instrument.

This Memorandum of Sublease shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatures.

IN WITNESS WHEREOF, the undersigned parties have each caused this Memorandum of Sublease to be executed as of the _____ 14th _____ day of January, 2005.

LANDLORD:

**WASH & GO CARWASH & DETAIL CENTER LLC,**
a California limited liability company

By: _____
Name: _____ BRAD GROS
Title: _____ PRES.

State of _California_
County of _Orange_

On _January 12, 2005_ before me, _Pamela S. Lawrence_
   Date                          Name, Title of Officer-e.g. "Jane Doe, Notary"

personally appeared _Richard J. Park_

☒ personally known to me  -OR-  ☐ proved to me on basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

PAMELA S. LAWRENCE
COMM. #1411403
Notary Public-California
ORANGE COUNTY
My Comm. Exp. April 30, 2007

Witness my hand and official seal.

_____
SIGNATURE OF NOTARY

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL

☐ CORPORATE OFFICER(S)

☐ PARTNER(S)

☐ ATTORNEY-IN-FACT

☐ TRUSTEE(S)

☐ SUBSCRIBING WITNESS

☐ GUARDIAN/ CONSERVATOR

☐ OTHER:_____

SIGNER IS REPRESENTING:
_____

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to unauthorized documents.

THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT AT THE RIGHT:

Title or Type of Document _Memo Sublease # 1988_
Number of Pages _6_ Date of Document _1/12/05_
Signer(s) Other Than Named Above:_____

g:\o&r\pennzoil\pipeline\alliedlube,inc.,et al- 1st amend\re\landlord docs\store#1988-3080mainst\mem-ls.doc

5

EXHIBIT A

DESCRIPTION OF THE LAND

All that certain real property situated in the County of Orange, State of California, described as follows:

Parcel 2 of Parcel Map No. 96-128, in the City of Irvine, County of Orange, State of California, as shown on a Map recorded in Book 297, Pages 34, 35 and 36 of Parcel Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number:       **447-172-07**

Common Address:  Store #1988, 3080 Main Street, Irvine, CA 92614

g:\o&t\pennzoil\pipeline\alliedlube,inc.,et al- 1st amend\rt\landlord docs\store#1988-3080mainst\mem-ls.doc

6

24

EXHIBIT A

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
ZNM HOLDINGS, INC.
3080 MAIN STREET
IRVINE, CA. 92614

FIDELITY NATIONAL TITLE COMPANY
9890585-DJ

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   9.00

2006000386865 08:00am 06/09/06
119 30 A34 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

A.P.N.: 447-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        Order No.: 9890585

—————— Space Above This Line for Recorder's Use Only ——————
Escrow No.: 1401

## ASSIGNMENT OF LEASE

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**WASH & GO CAR WASH AND DETAIL CENTER, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

hereby transfers and assigns to **ZNM HOLDINGS, INC., A CALIFORNIA CORPORATION,** all right, title and interest in and to and under the Premises Lease of the following real property, together with all existing or subsequently erected or affixed buildings, improvements, and fixtures, all easements, rights of way and appurtenances, all other rights, royalties and profits relating to the real property described as:

the following described property in the City of **IRVINE,** County of **Orange** State of California;

PARCEL 2 OF PARCEL MAP NO. 96-128, AS SHOWN ON A MAP FILED IN BOOK 297, PAGES 34, 35, AND 36 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, CALIFORNIA.
AKA: 3080 MAIN STREET, IRVINE, CA 92614
THIS DOCUMENT REFLECTS THE ASSIGNMENT OF THE LESSEE'S INTEREST UNDER THAT CERTAIN UNRECORDED LEASE DATED APRIL 7, 1997, AS DISCLOSED BY A GROUND LEASE (SHORT FORM MEMORANDUM RECORDED DECEMBER 19, 1997 AS INSTRUMENT NO. 1997-0652593 OF OFFICIAL RECORDS. NO TRANSFER TAX DUE.
WASH & GO CAR WASH AND DETAIL CENTER,          TERM OF LEASE IS LESS THAN 99 YEARS
LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY

By: _____
FRED GARCIA, MANAGING MEMBER

Document Date: June 7, 2006

STATE OF CALIFORNIA                )SS
COUNTY OF   ORANGE            )
On   6/7/06              before me,  PAMILA S. MANNING, A NOTARY PUBLIC
personally appeared   FRED GARCIA
personally known to me or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____

PAMILA S. MANNING
Comm. # 1443548
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Oct. 4, 2007

This area for official notarial seal.

Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below

EXHIBIT A

Order No. 9890585 - A

## EXHIBIT "ONE"

PARCEL 2 OF PARCEL MAP NO. 96-128 IN THE CITY OF IRVINE, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON MAP FILED IN BOOK 297, PAGES 34, 35 AND 36 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, CALIFORNIA.

Assessor's Parcel No: 447-172-07

(Rev. 11/17/04)

:r: Non-Order Search  Doc: OR:2006 00386865          Page 2 of 2          Created By: jdegraff  Printed: 6/16/2009 6:06:00 PM PST

EXHIBIT A

FIDELITY NATIONAL TITLE COMPANY
9890585 - 05
RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:
WASH & GO CAR WASH AND DETAIL CENTER, LLC
c/o
12425 LEWIS STREET #101
GARDEN GROVE CA. 92840

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

27.00

2006000386872 08:00am 06/09/06
119 30 D11 A36 6
0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

A.P.N.:                    Order No.: 9890585

Space Above This Line for Recorder's Use Only
Escrow No.: 1401

# SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made this **First day of June, 2006**, between

TRUSTOR: ZNM HOLDINGS, INC., A CALIFORNIA CORPORATION,

whose address is 13428 MAXELLA AVE. #26, MARINA DEL REY, CA 90292-5620, and

TRUSTEE: FIRST AMERICAN TITLE INSURANCE CO., A CAL. CORP., a California Corporation, and

BENEFICIARY: WASH & GO CAR WASH AND DETAIL CENTER, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of **IRVINE, Orange** County, State of California, described as:

3080 MAIN STREET, IRVINE, CALIFORNIA
(LEGAL DESCRIPTION IS ATTACHED HERETO AND MADE A PART HEREOF)

This Note is given and accepted as a portion of the purchase price.

This Deed of Trust is given and accepted upon the express provision that should the property hereinbefore described, or any part hereof, be conveyed or alienated by Trustor, either voluntarily or by operation of law, without Beneficiary's written consent, then all sums secured hereby shall, at Beneficiary's option, become immediately due and payable.

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph 10 of the provisions incorporated by reference to collect and apply such rents, issues and profits.
FOR THE PURPOSE OF SECURING: 1.Performance of each agreement of Trustor incorporated by reference or contained herein.   2.Payment  of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of **$700,000.00** executed by Trustor in favor of Beneficiary or order.  3.Payment of such further sums as the then record owner of said property hereafter may  borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.
TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:  By the execution and delivery of this Deed of Trust and  the  note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County on October 18, 1961, and in all other counties on October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below and opposite the name of such county, viz:

A.P.N:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|--------|------|------|--------|------|------|--------|------|------|--------|------|------|--------|------|------|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Merced | 1547 | 538 | San Benito | 271 | 383 | Siskiyou | 468 | 181 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Modoc | 184 | 851 | San Bernardino | 5567 | 61 | Solano | 1105 | 182 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Mono | 52 | 429 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | Stanislaus | 1715 | 456 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Napa | 639 | 86 | San Luis Obispo | 1151 | 12 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | Tehama | 401 | 289 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | Trinity | 93 | 366 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Placer | 895 | 301 | Santa Clara | 5336 | 01 | Tulare | 2294 | 275 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | Tuolumne | 135 | 47 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Riverside | 3005 | 523 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | Yolo | 653 | 245 |
| Humboldt | 657 | 527 | | | | San Diego Series 2 Book 1961, Page 183887 | | | | | | Yuba | 334 | 486 |

(which provisions, identical in all counties, are printed on page 5 of this document) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references in property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale be mailed to Trustor at Trustor's address hereinbefore set forth, or if none shown, to Trustor at the property address.

NOTICE: A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE WILL BE SENT ONLY TO THE ADDRESS CONTAINED IN THIS RECORDED REQUEST. IF YOUR ADDRESS CHANGES, A NEW REQUEST MUST BE RECORDED.

*Signature of Trustor(s)*

_____

DIPU HAQUE

ZNM HOLDINGS, INC., A CALIFORNIA
CORPORATION

By: _____

    DIPU HAQUE, PRESIDENT

Document Date:  June 1, 2006

STATE OF CALIFORNIA,          )SS
COUNTY OF Los Angeles         )
On June 1, 2006          before me, Ernesto A. Gonzalez, Notary Public
personally appeared    Dipu Haque

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

```
ERNESTO A. GONZALEZ
Commission # 1657918
Notary Public - California
Los Angeles County
My Comm. Expires May 1, 2010
```

Dated:  June 1, 2006

_____

DIPU HAQUE, INDIVIDUALLY

A.P.N.

## DO NOT RECORD

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto: all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the rate called for in the note secured hereby, or at the amount allowed by law at date of expenditure, whichever is greater, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in this same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them.)

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties, must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so required, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or Proceeding in which Trustor, Beneficiary or Trustee shall be party unless brought by Trustee.

PAGE 3 OF 4

A.P.N:

------------------------------------DO NOT RECORD------------------------------------

## REQUEST FOR FULL RECONVEYANCE
*To be used only when note has been paid.*

To: FIRST AMERICAN TITLE INSURANCE CO., A CAL. CORP., Trustee          Dated: _____

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

┌                                                        ┐
    Mail Reconveyance to:                _____

_____          _____

_____          By _____

_____          By _____
└                                                        ┘

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.
Both must be delivered to the Trustee for cancellation before reconveyance will be made.

## Short Form
### DEED OF TRUST
WITH POWER OF SALE
(INDIVIDUAL)

## FIRST AMERICAN TITLE INSURANCE CO., A C
AS TRUSTEE
2 FIRST AMERICAN WAY
SANTA ANA, CA 92705

PAGE 4 OF 4

LETTER LOAN AGREEMENT

_____5/25_____. 2006

BLX Capital. LLC
Independence Corporate Park
One Independence Pointe. Suite 102
Greenville. SC 29615

Re:        $1,050.000.00 Loan (the "Loan") by BLX Capital, LLC ("Lender") to ZNM Holdings
           Inc. ("Borrower") for the acquisition of the land more particularly described on
           Exhibit "A" attached hereto and certain improvements (the "Improvements") located
           thereon (collectively, the "Land")

Gentlemen:

        In order to finance the acquisition of the Leasehold estate. Improvements and related costs.
you, as Lender, have agreed to loan to the Borrower, and the Borrower has agreed to borrow from the
Lender, a principal sum not in excess of $1,050,000.00 (the "Loan") subject to the terms and
conditions hereafter stated in this Letter Loan Agreement:

        1.    It is understood and agreed that the Borrower will execute contemporaneously
herewith or immediately hereafter all of the documents involved in the Loan and Borrower agrees to
do all things necessary to insure that all of said documents remain outstanding and enforceable in
accordance with their terms during the full term of the Loan. The documents executed are all of even
date herewith and include a promissory note to Lender in the amount of $1,050,000.00 (the "Note") a
Deed of Trust (with Security Agreement. Assignment of Rents and Financing Statement) securing
the Note and other documents securing or relating to the Loan (the "Loan Documents").

        2.    The obligation of the Lender to advance the loan proceeds hereunder is and shall be
subject to the prior or simultaneous occurrence or satisfaction of each of the following conditions:

        (a)    Lender shall have received such instruments and documents as the
    Lender may specify, and in such form and content and containing such certifications.
    approvals and other data and information as the Lender may reasonably require.

        (b)    Policies of insurance (completed value reporting form, including
    coverage, and, if requested, all risk coverages). comprehensive liability insurance,

EXHIBIT A

fire and extended coverage insurance in an amount acceptable to Lender, each with loss payable clauses in favor of the Lender, and workmen's compensation insurance, in such forms and amounts and issued by an insurer reasonably satisfactory to Lender, shall have been delivered to the Lender and shall be currently in force.

(c)     There shall currently exist no event of default under any of the Loan Documents securing the Loan.

(d)     The Improvements shall not have been materially injured, damaged or destroyed by fire or other casualty, nor shall the Improvements or any part of the Project be subject to condemnation proceedings or negotiations for sale in lieu thereof.

3.     The occurrence of any of the following shall constitute Events of Default hereunder

(a)     Borrower shall fail to comply with the provisions of this Letter Loan Agreement.

(b)     If a default shall occur under any of the Loan Documents securing the Loan.

(c)     If the Borrower shall (i) apply for or consent to the appointment of a receiver, trustee, or liquidator, (ii) admit in writing his inability to pay his debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated a bankrupt or insolvent, or (v) file a voluntary petition in bankruptcy or file a petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency law or an answer admitting the material allegations of a petition filed against Borrower in any bankruptcy or insolvency proceeding.

(d)     If an order, judgment or decree shall be entered, without the application, approval or consent of the Borrower or any guarantor of the Loan, by any court of competent jurisdiction appointing a receiver, trustee or liquidator of the Borrower or any guarantor or of all or a substantial part of the assets of the Borrower, or any guarantor, and such order, judgment or decree shall continue unstayed and in effect for a period of sixty (60) consecutive days.

(e)     If any levy, attachment or garnishment be issued, or if any lien for the performance of work or the supply of materials be filed against the Land or the Project and remain unsatisfied or unbonded at the time of any request for an advance or for a period of forty-five (45) days after the date of filing thereof.

(f)     If the Borrower is unable to satisfy any condition of Borrower's right to receive advances hereunder for a period in excess of thirty (30) days.

EXHIBIT A

(g)　　If the Borrower fails to comply with any requirements of any Governmental Authority within thirty (30) days after notice in writing of such requirement shall have been given to the Borrower.

(h)　　If Borrower should dissolve.

4.　　The Lender shall have the right, upon the happening of any of the foregoing Events of Default, in addition to any rights or remedies available to it under the deed of trust securing the Loan or any other instrument securing the Loan, to enter into possession of the Land and all sums so expended by the Lender shall be deemed to have been paid to the Borrower and secured by the deed of trust securing the Loan. For this purpose, Borrower hereby constitutes and appoints the Lender as Borrower's true and lawful attorney-in-fact with full power of substitution to complete the Project in the name of the Borrower, and hereby empowers said attorney or attorneys as follows:

(a)　　To use any funds of the Borrower, including any funds which may remain unadvanced hereunder, for the purpose of completing or maintaining the Improvements on the Land;

(b)　　To pay, settle or compromise all existing bills and claims which or may be liens against the Land, or may be necessary or desirable for the completion of the work or the clearance of title; and

It is understood that this power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked until the Loan has been repaid to Lender in full. Said attorney-in-fact shall also have power to prosecute and defend all actions or proceedings in connection with the Land and to take such action and require such performance as is deemed necessary.

Thank you very much for your cooperation in this matter.

Borrower:

ZNM Holdings Inc.

By: _____
　　　Dipu Haque, President

Attest: _____
　　　Monowara B. Sikder, Secretary

EXHIBIT A

EXHIBIT "A"

Exhibit C   36

EXHIBIT A

ADJUSTABLE RATE PROMISSORY NOTE

$1,050,000.00

Maturity Date: May 25, 2016  (the "Maturity Date")          Date:  May 25, 2006

    1.      Promise to Pay. FOR VALUE RECEIVED, ZNM Holdings Inc. ("Maker") promise to pay to the order of BLX Capital, LLC (sometimes referred to as "Lender" and also sometimes referred to herein together with all subsequent holders hereof as "Holder") at its offices at 1633 Broadway, 39th Floor, New York, NY 10019, or such other place as Holder may from time to time specify in writing, the sum of ONE MILLION FIFTY THOUSAND AND NO/100 DOLLARS ($1,050,000.00) in legal and lawful money of the United States of America, together with interest thereon from the date of funding hereunder until maturity at the rate set out below.

    2.      Loan Agreement. This Note is entered into as part of a loan transaction between Maker and Lender evidenced by instruments of even date including without limitation, that certain Loan Agreement, Mortgage and Security Agreement, Security Agreement, Guarantee Agreements and Other Security Documents. The term Other Security Documents as used in this Note shall mean all and any of the documents, other than this Note, the Deed of Trust and Security Agreement, Security Agreement, Guarantee Agreement(s) and Loan Agreement now or hereafter executed by Maker and/or others by or in favor of Lender, which wholly or partially secure, evidence or guarantee payment of this Note. The Loan Agreement, Mortgage and Security Agreement, Security Agreement, Guarantee(s) and Other Security Documents are collectively referred to herein as the "Loan Documents". Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Loan Documents.

3.    Interest Rate. THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. Interest shall be calculated based on a three hundred sixty (360) day year and charged for the actual number of days elapsed. This Note shall bear interest at the variable rate of five and sixty-six one-hundredths percent (5.66%) per annum (the "Spread") over the LIBOR Rate (the "Interest Rate"), adjusted monthly (the "Interest Period"). The Spread is determined on the date this Note is executed and is equal to the Prime Rate plus two and three quarters percent (2.75%), minus the thirty (30) day LIBOR Rate. For purposes of determining the Interest Rate, the Prime Rate is established by the Wall Street Journal and the thirty (30) day LIBOR Rate is established by the British Bankers Association, each as of the business day immediately preceding the date of this Note. Thereafter, the term "LIBOR Rate" shall mean, for any interest accrual period, the highest rate per annum (rounded upwards, if necessary, to the nearest 1/100 of 1%) appearing on Telerate Page 3750 (or any successor page) as the "One Month" or "Thirty Day" London interbank offered rate for Dollars at approximately 11:00 a.m. (London Time) on the first business day of the calendar month ("Change Date") for said interest accrual period. If the rate described above does not appear on the Telerate System on any applicable interest determination date, the LIBOR rate shall be the rate (rounded upward, if necessary, to the nearest 1/100 of 1%) appearing on Reuters Screen LIBOR Page as the highest London interbank One Month or Thirty Day rate for deposits in Dollars at approximately 11:00 a.m. (London Time) on the first business day of the calendar month for said interest accrual period.

    a.      Unavailability of Deposits or Inability to Ascertain Libor. Notwithstanding any other provision of this Note, if prior to the commencement of any Interest Period, the Lender shall determine that deposits in the amount of the Loan scheduled to be outstanding during such Interest Period are not readily available to the Lender in the relevant market or by reason of circumstances affecting the relevant market and/or adequate and reasonable means do not exist for ascertaining Libor or Adjusted Libor, then the Lender shall promptly give notice thereof to the undersigned and the obligations of the Lender to create or continue a Libor based interest rate in such amount and for such Interest Period shall terminate, and the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 2.75%; provided, however, that (i) upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate; and (ii) when deposits in such amount and for the Interest Period selected by the

1

EXHIBIT A

undersigned shall again be readily available in the relevant market and adequate and reasonable means exist for ascertaining Libor, the undersigned then shall, after due notice to Lender, have the option of reconverting the method of computing the interest rate on this Note into a Libor based interest rate.

         b.     <u>Taxes and Increased Costs</u>. If the Lender shall determine in good faith that any change in any applicable law, treaty, regulation or guideline (including, without limitation, Regulation D of the Board of Governors of the Federal Reserve System) or any new law, treaty, regulation or guideline, or any interpretation of any of the foregoing by any governmental authority charged with the administration thereof or any central bank or other fiscal, monetary or other authority having jurisdiction over the Lender or its lending branch, or the Libor based interest rate contemplated by this Agreement (whether or not having the force of law) shall:

         (i)     impose, increase, or deem applicable any reserve, special deposit or similar requirement against assets held by, or deposits in or for the account of, or loans by, or any other acquisition of funds or disbursements by, the Lender which is not in any instance already accounted for in computing the Libor based interest rate;

         (ii)     subject the Lender, the Loan or this Note to any tax (including, without limitation, any United Stated interest equalization tax or similar tax however named applicable to the acquisition or holding of debt obligations and any interest or penalties with respect thereto), duty, charge, stamp tax, fee, deduction or withholding in respect of the Loan or this Note, except such taxes as may be measured by the overall net income or gross receipts of the Lender or its lending branches, and imposed by the jurisdiction, or any political subdivision or taxing authority thereof, in which the Lender's principal executive office or its lending branch is located;

         (iii)     change the basis of taxation of payments of principal and interest due from the undersigned to the Lender hereunder or under this Note (other than by a change in taxation of the overall net income or gross receipts of the Lender); or

         (iv)     impose on the Lender any penalty with respect to the foregoing or any other condition regarding this Note, or the disbursement of the Loan;

and the Lender shall determine that the result of any of the foregoing is to increase the cost (whether by incurring a cost or adding to a cost) to the Lender of creating or maintaining the Loan or to reduce the amount of principal or interest received or receivable by the Lender (with benefit of, or credit for, any prorations, exemption, credits or other offsets available under any such laws, treaties, regulations, guidelines or interpretations thereof), then the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 2.75%; <u>provided</u>, <u>however</u>, that upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate. If the Lender makes such a determination, the Lender shall provide to the undersigned a certificate setting forth the computation of the increased cost or reduced amount as a result of any event mentioned herein in reasonable detail and such certificate shall be conclusive if reasonably determined.

         c.     In the event that Holder is unable to obtain any such quotations as provided above, it will be deemed that the LIBOR Rate cannot be determined. In the event that the LIBOR Rate cannot be determined for any Interest Period, then the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 2.75%; <u>provided</u>, <u>however</u>, that upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate. The

2

EXHIBIT A

term Prime Rate shall mean the prime rate in effect on the first business day of the calendar month for said interest accrual period as published in the Wall Street Journal on the next business day.

    4.    <u>Principal and Interest Payments</u>. This Note shall be repaid in monthly installments. One payment of interest only shall be due and payable on the date monies are advanced, for the period commencing on such date and ending on the last day of the calendar month in which the date of this Note occurs. Thereafter, this Note shall be repaid in combined monthly payments of principal and interest commencing on the first day of the second full calendar month after the date of this Note and continuing monthly and regularly thereafter on the first day of each successive calendar month until the Maturity Date unless otherwise accelerated, when the entire principal balance remaining unpaid, along with all accrued and unpaid interest, shall be due and payable in full.  All payments shall be applied first to the payment of all fees, expenses and other amounts due Holder (excluding principal and interest), then to interest accrued to the date of receipt of said installment, and the balance, if any, to the principal, provided, however, that after an Event of Default, payments will be applied to such of the obligations of Make to Holder as Holder determines in its sole discretion.  If and when the interest rate is adjusted each month, the remaining principal balance will be re-amortized and payments adjusted accordingly to insure the loan balance will be repaid within the remaining life of the loan.

    The Initial monthly payments of principal and interest will be in the amount of $ <u>14,475.46</u>   until adjusted pursuant to the terms hereof. MAKER ACKNOWLEDGES AND AGREES THAT IF THE INTEREST RATE CHANGES, AS DESCRIBED HEREINABOVE, THE AMOUNT OF MONTHLY PAYMENTS WILL CHANGE. INCREASES IN THE INTEREST RATE MAY RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE MAY LOWER PAYMENTS.

    5.    <u>Change Date</u>. On each Change Date, the Holder will calculate the new interest rate. If there is a change in the interest rate, the new rate will be effective as of the first day of the calendar month in which a Change Date occurs, and the Holder will determine the amount of monthly payments sufficient to pay the balance of the principal plus accrued interest at the new interest rate in substantially equal payments by the Maturity Date.

    6.    <u>Funding Indemnity</u>. In the event Lender shall incur any loss of profit, and any loss, cost or expense (including, without limitation, any loss, cost or expense incurred by reason of the liquidation or reemployment of deposits or other funds acquired or contracted to be acquired by Lender to fund or maintain the Loan, or the relending or reinvesting of such deposits or other funds or amounts paid or prepaid to Lender) as a result of:

        a.    any payment under this Note on a date other than the then applicable Interest Period for any reason, whether before or after the occurrence of any Event of Default, and whether or not such payment is required by any provisions of this Note; or

        b.    any failure by the undersigned to create, borrow, continue or effect by conversion the Loan on the date specified in a notice given pursuant to this Note;

then upon the demand of Lender, the undersigned shall pay to Lender such amount as will reimburse Lender for such loss, cost or expense. Without limitation of the foregoing, any prepayment of the Loan on a date other than the last day of the then applicable Interest Period shall be accompanied by an interest surcharge equal to the loss Lender shall suffer as a result of Libor as calculated on the date of such prepayment for the period of time equal to the Interest Period for such portion of the Loan being prepaid being less than Libor applicable to such portion being prepaid. Maker recognizes that Holder would incur substantial additional costs and expenses in the event of such a prepayment of the indebtedness evidenced by this Note and that the interest surcharge compensates Holder for such costs and expenses (including without limitation, the loss of Holder's investment opportunity during the period from the date of prepayment until the Maturity Date). If Lender requests such a reimbursement Lender shall provide the undersigned with a certificate setting forth the computation of the loss of profit and any loss, cost or expense giving rise to the request for reimbursement in reasonable detail and such certificate shall be conclusive if reasonably determined.

3

EXHIBIT A

7.     Late Charges.  Maker shall pay upon demand, a "Late Charge" equal to five percent (5%) of the amount of any payment of principal, interest or both, or any other amount due under this Note or the Loan Documents, which is not paid within ten (10) days of the due date thereof. Late Charges are: (a) payable in addition to, and not in limitation of, the Default Rate, (b) intended to compensate Holder for administrative and processing costs incident to late payments, (c) are not interest, and (d) shall not be subject to refund or rebate or credited against any other amount due.

8.     Default Rate.  Holder shall have the option of imposing, and Maker shall pay upon demand, an interest rate ("Default Rate") which is equal to four percent (4%) per annum above the interest rate otherwise payable: (a) while any monetary default exists under this Note or the Loan Documents and is continuing, during that period between the due date and the date of payment; (b) following any Event of Default until the Event of Default is either cured or waived by Holder; (c) after judgment has been rendered on this Note or under any Loan Documents and (d) after the Maturity Date.

9.     Prepayment Consideration.  Maker agrees that in the event any portion of this Note is paid in whole or in part prior to maturity, so as to constitute a "Prepayment", consideration will be tendered with the prepayment to the Holder ("Prepayment Consideration") based upon the following schedule:

Five percent (5.0%) of the outstanding loan principal balance prepaid if prepaid during the first Loan Year.

Four percent (4.0%) of the outstanding loan principal balance prepaid if prepaid within the second Loan Year.

Three percent (3.0%) of the outstanding loan principal balance prepaid if prepaid within the third Loan Year.

Two percent (2.0%) of the outstanding loan principal balance prepaid if prepaid within the fourth Loan Year.

One percent (1.0%) of the outstanding loan principal balance prepaid if prepaid within the fifth Loan Year or thereafter.

a.     It is understood and agreed that a "Prepayment" shall be any principal payment made ahead of schedule which when aggregated with all other Prepayments within a Loan Year, exceeds fifteen percent (15.00%) of the then outstanding principal balance of this Note. A "Loan Year" is defined as the fifteen (15) month period commencing on the date of this Note or any consecutive twelve (12) month period during the term hereof. No Prepayment Consideration will be due for involuntary prepayments resulting from the proceeds of any casualty loss or condemnation.

b.     Maker acknowledges that the Prepayment Consideration is consideration to Holder for the privilege of prepaying the indebtedness evidenced by this Note prior to maturity, and Maker recognizes that Holder would incur substantial additional costs and expenses in the event of a prepayment of the indebtedness evidenced by this Note and that the Prepayment Consideration compensates Holder for such costs and expenses (including without limitation, the loss of Holder's investment opportunity during the period from the date of prepayment until the Maturity Date).     Maker agrees that Holder shall not, as a condition to receiving the Prepayment Consideration, be obligated to actually reinvest the amount prepaid in any manner whatsoever.

10.     Event of Default.  At the option of the holder, this Note and the indebtedness evidenced hereby, together with any monies agreed to be paid by Maker pursuant to this Note and the Loan Documents, shall become immediately due and payable without further notice or demand, and notwithstanding any prior waiver of any breach or default, or other indulgence, upon the occurrence at any time of any one or more of the following events, each of which shall be an "Event of Default" hereunder and under the Loan Documents:  (i) default continuing uncured beyond the applicable grace period, if any, set forth in the Loan Documents, in making any payment of interest, principal, other charges or payments due hereunder or under the Loan Documents; (ii) an Event of Default as

4

EXHIBIT A

defined in or as set forth in the Loan Documents; or (iii) an event which pursuant to any express provision of the Loan Documents, gives Lender the right to accelerate the Loan.

11.    No Waiver.  No delay or omission on the part of the Holder in exercising any right hereunder or any right under the Loan Documents or any instrument or agreement now or hereafter executed in connection herewith, or any agreement or instrument which is given or may be given to secure the indebtedness evidenced hereby, or any other agreement now or hereafter executed in connection herewith or therewith shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or waiver of the same or of any other right on any future occasion.

12.    Waiver.  Maker and each and every party liable hereon or for the indebtedness evidenced hereby whether as maker, endorser, guarantor, surety or otherwise hereby:  (a) waives presentment, demand, protest, suretyship defenses and defenses in the nature thereof; (b) waives any defenses based upon and specifically assents to any and all extensions and postponements of the time for payment, changes in terms and conditions and all other indulgences and forbearances which may be granted by the holder to any party now or hereafter liable hereunder or for the indebtedness evidenced hereby; (c) agrees to any substitution, exchange, release, surrender or other delivery of any security or collateral now or hereafter held hereunder or in connection with any of the Loan Documents, and to the addition or release of any other party or person primarily or secondarily liable; (d) agrees that if any security or collateral given to secure this Note or the indebtedness evidenced hereby or to secure any of the obligations set forth or referred to any of the Loan Documents, shall be found to be unenforceable in full or to any extent, or if Lender or any other party shall fail to duly perfect or protect such collateral, the same shall not relieve or release any party liable hereon or thereon nor vitiate any other security or collateral given for any obligations evidenced hereby or thereby; (e) agrees to pay all reasonable costs and expenses incurred by Lender or any other holder of this Note in connection with the indebtedness evidenced hereby, including, without limitation, all reasonable attorneys' fees and costs, for the implementation of the Loan, the collection of the indebtedness evidenced hereby and the enforcement of rights and remedies hereunder or under the Loan Documents, whether or not suit is instituted; (f) waives the right to assert, in any action brought by Lender or Holder for payment of this Note or to enforce any obligations under this Note and/or the Loan Documents, any right of recission, set-off, counterclaim or defense with respect to payment of this Note and/or enforcement of any obligations sought to be enforced under the Loan Documents and (g) consents to all of the terms and conditions contained in this Note and the Loan Documents.

13.    Usury/Stated Rate.  Maker and Lender intend to strictly comply with all applicable federal and New York laws, including applicable usury laws (or the usury laws of any jurisdiction whose usury laws are deemed to apply to the Note or any other Loan Document despite the intention and desire of the parties to apply the usury laws of the State of New York).  Accordingly, the provisions of this paragraph shall govern and control over every other provision of this Note or any other Loan Document which conflicts with this Section, even if such provision declares that it controls.  As used in this paragraph, the term "interest" includes the aggregate of all charges, fees, benefits or other compensation which constitute interest under applicable law, provided that, to the maximum extent permitted by applicable law, (a) any non-principal payment shall be characterized as an expense or as compensation for something other than the use, forbearance or detention of money and not as interest, and (b) all interest at any time contracted for, reserved, charged or received shall be amortized, prorated, allocated and spread, in equal parts during the full term of the obligations.  In no event shall Maker or any other person be obligated to pay, or Holder have any right or privilege to reserve, receive or retain, (a) any interest in excess of the maximum amount of non-usurious interest permitted under the laws of the State of New York or the applicable laws (if any) of the United States or of any other state, or (b) total interest in excess of the amount which Holder could lawfully have contracted for, reserved, received, retained or charged had the interest been calculated for the full term of the obligations.  On each day, if any, that the interest rate (the "Stated Rate") called for under this Note or any other Loan Document exceeds the maximum non-usurious rate, the rate at which interest shall accrue shall automatically be fixed by operation of this sentence at the maximum non-usurious rate for that day.  Thereafter, interest shall accrue at the Stated Rate unless and until the Stated Rate again exceeds the maximum non-usurious rate, in which case, the provisions of the immediately preceding sentence shall again automatically operate to limit the interest accrual rate to the maximum non-usurious rate.  The daily interest rates to be used in calculating interest at the maximum non-usurious rate shall be determined by dividing the applicable maximum non-usurious rate by the number of days in the calendar year for which such calculation is being made.  None of the terms and provisions contained in this Note or in any other Loan Document which directly or indirectly relate to interest shall ever be construed without reference to this paragraph, or be construed to create a contract to pay for the use, forbearance or

5

EXHIBIT A

detention of money at an interest rate in excess of the maximum non-usurious rate. If the term of any obligation is shortened by reason of acceleration of maturity as a result of any Default or any other cause, or by reason of any required or permitted prepayment, and if for that (or any other) reason Holder at any time, including but not limited to, the stated maturity, is owed or receives (and/or has received) interest in excess of interest calculated at the maximum non-usurious rate, then and in any such event all of any such excess interest shall be canceled automatically as of the date of such acceleration, prepayment or other event which produces the excess, and, if such excess interest has been paid to Holder, it shall be credited pro tanto against the then-outstanding principal balance of Maker's obligations to Holder, effective as of the date or dates when the event occurs which causes it to be excess interest, until such excess is exhausted or all of such principal has been fully paid and satisfied, whichever occurs first, and any remaining balance of such excess shall be promptly refunded to its payor.

14.    Replacement Note. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of this Note or any Loan Document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon surrender and cancellation of such Note or other Loan Document, Maker will issue, in lieu thereof, a replacement Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

15.    Assignment. Lender shall have the unrestricted right at any time or from time to time and without Maker's or Guarantor's consent, to assign all or any portion of its rights and obligations hereunder to one or more lenders or purchasers (each, an "Assignee"), and Maker and Guarantor agrees that it shall execute, or cause to be executed, such documents, including without limitation, the delivery of an estoppel certificate and such other documents as Lender shall deem necessary to effect the foregoing.

16.    Jurisdiction/Venue. It is understood and agreed that this Note and all of the Loan Documents were negotiated and have been or will be delivered to Lender in the State of New York, which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by this Note and the Loan Documents. Maker agrees to furnish to Lender at Lender's office in New York, N.Y., all further instruments, certifications and documents to be furnished hereunder. The parties also agree that if collateral is pledged to secure the debt evidenced by this Note, that the state or states in which such collateral is located each have a substantial relationship to the parties and to the underlying transaction embodied by this Note and the Loan Documents.

17.    Governing Law. MAKER AGREES THAT THE HOLDER OF THIS NOTE SHALL HAVE THE OPTION BY WHICH STATE LAWS THIS NOTE SHALL BE GOVERNED AND CONSTRUED: (A) THE LAWS OF THE STATE OF NEW YORK, OR (B) IF COLLATERAL HAS BEEN PLEDGED TO SECURE THE DEBT EVIDENCED BY THIS NOTE, THEN BY THE LAWS OF THE STATE OR STATES WHERE THE COLLATERAL IS LOCATED, AT HOLDER'S OPTION. THIS CHOICE OF STATE LAWS IS EXCLUSIVE TO THE HOLDER OF THIS NOTE. MAKER SHALL NOT HAVE ANY OPTION TO CHOOSE THE LAWS BY WHICH THIS NOTE SHALL BE GOVERNED. MAKER AGREES THAT MAKER, THIS NOTE AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH, REGARDLESS OF THE CHOICE OF LAW MADE BY HOLDER, SHALL BE GOVERNED BY THE PROVISIONS OF THE CREDIT AGREEMENTS ACT (AS ENACTED BY AND INTERPRETED IN THE STATE OF ILLINOIS)(815 ILCS 160 ET. SEQ.) AND AS THAT ACT MAY BE AMENDED FROM TIME TO TIME. MAKER AND GUARANTORS HEREBY CONSENT TO THE EXERCISE OF JURISDICTION OVER IT BY ANY FEDERAL COURT SITTING IN NEW YORK OR ANY NEW YORK COURT SELECTED BY HOLDER, FOR THE PURPOSES OF ANY AND ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THE NOTE, THE LOAN AGREEMENT AND ALL OTHER LOAN DOCUMENTS. MAKER AND GUARANTORS IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT, ANY CLAIM BASED ON THE CONSOLIDATION OF PROCEEDINGS IN SUCH COURTS IN WHICH PROPER VENUE MAY LIE IN DIVERGENT JURISDICTIONS, AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. MAKER AND GUARANTORS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY

6

EXHIBIT A

18.    Holder's Right to Convey.  This Note shall be binding upon Maker and its successors and assigns and shall inure to the benefit of Holder and its successors and assigns.  Holder has full right and authority to sell, assign, pledge, hypothecate and transfer all or any portion of its rights and/or obligations under this Note and the Loan Documents; the Note and the Loan Documents and all information now or hereafter in its possession relating to the Maker and any or all Guarantors (all rights of privacy hereby being waived), and to retain any compensation received by Holder in connection with any such transaction.

19.    Unenforceability of Process.  The invalidity or unenforceability of any provision hereof or of the Loan Documents, or of any other instrument, agreement or document now or hereafter executed in connection with the loan made pursuant hereto and thereto shall not impair or vitiate any other provision of any of such instruments, agreements and documents, all of which provisions shall be enforceable to the fullest extent now or hereafter permitted by law.

20.    Notices.  Any notices given with respect to this Note shall be given in the manner provided for in the Loan Documents.

21.    Extensions, Modifications and Releases.  From time to time, Lender may, at its option, extend the time of payment of the outstanding principal sum, accept a renewal of this Note, modify the terms and time of payment of the outstanding principal sum or interest due, join in any extension or subordination agreement, release any security for the Note, take or release other or additional security, and agree in writing with Maker to modify the rate of interest of this Note or change the amount of the monthly payments payable under this Note, (a) without affecting the obligation of Maker to pay the outstanding principal balance of this Note and observe its covenants, (b) without affecting the guaranty of any person, corporation, partnership or other entity for payment of the outstanding principal sum, (c) without giving notice to or obtaining the consent of Maker, any guarantors or the successors or assigns of guarantors, and (d) without liability on the part of Lender.

22.    CONFESSION OF JUDGMENT.  The undersigned hereby irrevocably authorizes and empowers any attorney-at-law to appear in any of any court of record and to confess judgment against the undersigned for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees of fifteen percent (15%) of the total indebtedness or Five Thousand Dollars ($5,000.00), whichever is the larger amount, plus costs of suit, and to release all errors, and waive all rights of appeal.  The undersigned waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.  No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as lender may elect until all amounts owing on this Note have been paid in full.  The undersigned hereby waives and releases any and all claims or causes of action which the undersigned might have against any attorney acting under the terms of authority which the undersigned has granted herein arising out of or connected with the confession of judgment hereunder

7

EXHIBIT A

Executed as of the date first written above.

MAKER:

ZNM Holdings Inc.

By: _____
       Dipu Haque, President

Attest: _____
       Monowara B. Sikder, Secretary

8

EXHIBIT A

FIDELITY NATIONAL TI.   COMPANY

9890585-05

RECORDATION REQUESTED BY:

BLX CAPITAL, LLC
1633 Broadway, 39th Floor
New York, New York 10019

This Document was electronically recorded by
Fidelity National Major Accounts

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||| 105.00
2006000386866 08:00am 06/09/06
119 30 D11 A36 U08 30
0.00 0.00 0.00 0.00 87.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO
   THE LAW OFFICE OF JONI L. WALASKI
   1633 Broadway, 39th Floor
   New York, New York 10019

DEAL FLOW NUMBER:

---

## LEASEHOLD DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST ALSO CONSTITUTES AND IS FILED AS A FIXTURE FILING UNDER THE CALIFORNIA UNIFORM COMMERCIAL CODE.

This Leasehold Deed of Trust, Assignment of Rents, Security Agreement and Fixture filing (the "Deed of Trust") is made as of ___5/25___, 2006 by ZNM Holdings Inc., a California corporation, whose address is 3080 Main Street, Irvine, CA 92614 ("Trustor") to W. David Jenkins, having an address at 700 North Pearl Street, Suite 1850, Dallas, Texas 75210, Sacramento, CA 95821 ("Trustee") for the benefit of BLX CAPITAL, LLC, a Delaware limited liability company, whose address is 1633 Broadway, 39th Floor, New York, New York 10019 ("Beneficiary"). Trustor is the owner of a leasehold estate in the real property described in the attached Exhibit "A" created by that certain lease dated April 7, 1997, executed by Irvine Retail Properties Company, a Division of the Irvine Company, a Michigan Corporation, as lessor, and Grady Hanshaw and Sholeh Hanshaw, husband and wife, dba Main Street Car Wash, as lessee, as referenced in the document entitled "Ground Lease (Short-Form Memorandum)", which was recorded on December 19, 1997, as Instrument No. 19970652593, of Official Records, for the term, upon and subject to all the provisions contained in said document, and in said lease.

The Lessee's Interest under said lease has been assigned to Wash & Go Car Wash Corp., a Nevada Corporation, by quitclaim deed which recorded August 1, 2001 as Instrument No. 20010526376 of Official Records, Reference being hereby made to the record thereof for full particulars.

By Assignment dated October 17, 2003, executed by Brady Gross as Assignor, the interest of Assignor in and to the above leasehold estate was assigned to Wash & Go Carwash & Detail Center, LLC, A California limited liability company, as assignee, recorded November 20, 2003, Instrument No. 2003001408328; of Official Records.

1

46                                                                    EXHIBIT A

## W I T N S E S S T H:

Trustor does hereby irrevocably grant, bargain, sell, and convey to trustee in trust, for the benefit of Beneficiary, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, all of Trustor's right, title and interest in, to and under that certain real property (the "Land") in the County of Orange, State of California, described in Exhibit "A" attached hereto and by this reference incorporated herein, whether created or at any time arising under the Ground Lease or otherwise acquired by Trustor, together with any and all buildings and improvements (collectively, the "Improvements") now or hereafter erected thereon, including, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to such buildings and improvements, which are herein collectively called the "Property";

Together with all interest, estate or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Property;

Together with all easements, rights-of-way and rights used in connection therewith or as a means of access thereto, and all tenements, hereditaments and appurtenances thereof and thereto, and all water rights and shares of stock evidencing same;

Together with all right, title and interest of Trustor, now owned or hereafter acquired, in and to any land lying within the right-of-way of any street, open or proposed, and adjoining the Property; and any and all sidewalks, alleys, and strips and gores of land adjacent to or used in connection with the Property;

Together with all right, title and interest of Trustor in and to all personal property now or hereafter owned by Trustor and now or at any time hereafter located on or at the Property or used in connection therewith, including all goods, machinery, tools, insurance proceeds, equipment, (including fire sprinklers and alarm systems, office air conditioning, heating, refrigerating, electronic monitoring, window or structural cleaning rigs, maintenance, and all other equipment of every kind), lobby and all other indoor and outdoor furniture, rugs, carpets, and other floor coverings, all inventory related to Trustor's operation of the Property and any business operated thereon by Trustor, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, lamps, chandeliers and other lighting fixtures, and office maintenance and other supplies and all proceeds thereof;

Together with all rights, title and interest of Trustor in the funds deposited pursuant to Section 1.07 or Section 1.08 hereof;

Together with all the estate interest, right, title other claim or demand, including claims or demands with respect to the proceeds of insurance in effect with respect thereto, which Trustor now has or may hereafter acquire in the Property, and any and all

2

awards made for the taking by eminent domain or by any proceeding or purchase in lieu thereof of the whole or any part of the Property, including any awards resulting from a change of grade of streets and awards for severance damages;

Together with any and all existing and future leases (including subleases thereof), whether written or oral, and any and all extensions, renewals and replacements thereof, upon all or relating to any part of the Property, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all guarantees of and security for lessee's performance thereunder (collectively, the "Leases");

Together with the immediate and continuing right to collect and receive all of the rents, fees, charges, accounts, income, receipts, revenues, issues, profits and other income or other payments of any nature now due or which may become due or to which Trustor may now or shall hereafter (including any income or any nature coming due during any redemption period) become entitled to or may make demand or claim for, arising or issuing from or out of the Leases or from or out of the Property or any part thereof, including for the use or occupancy of rooms and other public facilities, including deposits, minimum rents, additional rents, percentage rents, parking or common area maintenance, contribution, tax and insurance contribution, deficiency rents and liquidated damages following default in any Lease, all accounts and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Property, together with any and all rights and claims of any kind which Trustor may have against any tenant under the Leases or any subtenants or occupants of the Property (collectively, "Rent Payments");

Together with all plans, specification, contracts, agreements and purchase orders pertaining or incidental to the design or construction of any Improvements;

Together with all of Trustor's rights under any payment, performance or other bond in connection with construction of Improvements, and all construction materials, supplies and equipment delivered to the Property or intended to be used in connection with the construction of Improvements wherever actually located. All architectural drawings, plans, specification, soil tests, feasibility studies, appraisals, engineering reports and similar material relating to the Property;

Together with all contracts and rights pertaining to or affecting the Property including all options or contracts to acquire other property for use in connection with operation or development of the Property, deposits, bank accounts, contract rights, accounts, general intangibles, (including trademarks, trade names and symbols), permits, licenses, franchises and certificates;

Together with all books, records, surveys, reports, and other documents related to the Property or construction or operation of the Property;

3

EXHIBIT A

Together will all governmental permissions, environmental clearances, authority to subdivide the Property, rights, licenses and permits as are necessary for the commencement, continuation, completion, occupancy, use and disposition of all or any portion of the Property;

Together with all other personal property of Trustor located on the Property and wherever located and relating in any way whatsoever to the Property and whether now owned or hereafter acquired or created (including equipment, inventory, goods, documents, instruments, general intangibles, chattel paper, accounts, deposit accounts and contract rights, as all such terms are used in the California Uniform Commercial Code (the "UCC") and all other fixtures of Trustor now owned or hereafter in existence or hereafter acquired or created on, of or relating to the Real Property, and all substitutions, replacements, additions, accessions, and proceeds (including insurance proceeds) of all of the foregoing.

SUBJECT however, to a license hereby granted by Beneficiary to Trustor, but limited as hereinafter provided, to collect and receive all of the Rent Payments.

The entire estate, property and interest hereby conveyed to Trustee may hereinafter be referred to as the "Trust Estate".

## FOR THE PURPOSE OF SECURING:

1.      Payment of all indebtedness and other obligations evidenced by that certain Adjustable Rate Promissory Note of even date herewith (the "Note") by Trustor in favor of Beneficiary in the principal amount of ONE MILLION FIFTY THOUSAND and 00/100 DOLLARS ($1,050,000.00), with interest thereon, as provided therein and all prepayment charges, late charges and loan fees thereunder, and any and all amendments, modifications, extensions and renewals thereof. The interest rate, payment terms and the balance due on the Note and the indebtedness evidenced thereby may be indexed, adjusted, renewed, increased, decreased, restructured, modified or renegotiated without affecting the priority of this Deed of Trust.

2.      Payment and performance of all obligations of Trustor hereunder, including payment of all sums which may become due from Trustor or advances by Beneficiary or its successors, with interest thereon at the rate provided in the Note (the "Note Rate").

3.      Payment of all other indebtedness, with interest thereon, which may hereafter by loaned to Trustor, its successors, or assigns, by Beneficiary, when evidenced by a promissory note or other documents, instrument or agreement reciting that it is secured by this Deed of Trust.

4.      Payment and performance of all of the obligations of Trustor under the Loan Agreement between Trustor and Beneficiary dated of even date herewith (the "Loan Agreement") and the other Loan Documents (as hereinafter defined).

4

EXHIBIT A

This Deed of Trust, the Note, the Loan and any other document, instrument or agreement given to evidence of further secure the payment and performance of any obligation secured hereby may hereafter be referred to as the "Loan Documents," the terms and conditions of which are incorporated herein by this reference.

## ARTICLE I
## COVENANTS AND AGREEMENTS OF TRUSTOR

Trustor hereby covenants and agrees:

1.01    _Performance of Obligations Secured._  Trustee shall pay and perform all of the obligations secured hereby in accordance with the terms of the applicable Loan Documents.

1.02    _Maintenance of the Property._  The Property shall be maintained in good condition at all times.  Trustor shall promptly make all necessary repairs, replacements, and renewals so that the value of the Property shall be maintained.  Trustor shall not commit or permit any waste on the Property.  Trustor shall comply with all laws ordinances, regulations, and private restrictions affecting the Property.  Trustor shall operate the Property in such manner as to prevent deterioration of the land and improvements including fences, except for reasonable wear and tear from proper use.  Trustor shall not demolish or remove any improvements from the Property without the written consent of Beneficiary.

1.03    _Required Insurance._  Trustor shall at all times provide, maintain, and keep in force, or cause to be provided, maintained and kept in force, the following policies of insurance:

(a)    Insurance against loss or damage to the building and improvements situated on the Property (the "Improvements") by fire and any of the risks covered by insurance of the type now known as "broad form of extended coverage, " in an amount not less than one hundred percent (100%) of the full replacement cost of the Improvements (exclusive of the cost of excavations, foundations, and footings below the lowest basement floor), and with not more than One Thousand and No/100 Dollars ($1,000.00) deductible from the loss payable for any casualty, each of which policies of insurance carried in accordance with this subparagraph shall contain

(a)    the "Replacement Cost Endorsement";

(b)    Insurance against loss or damage to the Personal Property by fire and other risks covered by insurance of the type now known as "broad form of extended coverage"; and
(c)    Such other insurance and in such amounts as may, from time to time, be reasonably required by Beneficiary against the same or other hazards, including business

5

EXHIBIT A